FARBER ELECTRIC AND PLUMBING CO., INC., demandante, recurrida y recurrente, *v.* PROFESSIONAL REALTY CORPORATION, demandada, recurrente y recurrida.

*Número:* 12600. *Resuelto:* 21 de mayo de 1962.

*Celestino Iriarte* y *F. Fernández Cuyar,* abogados de la recurrente y recurrida; *Víctor A. Coll,* abogado de la recurrida y recurrente.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: Farber Electric and Plumbing Co., Inc., en adelante Farber, contrató con Professional Realty Corporation, en adelante Professional, para llevar a cabo la instalación eléctrica de un edificio que estaba construyendo la segunda. Terminadas las obras, Farber demandó a Professional en cobro de cierta cantidad de dinero adeudádale con motivo de dichos trabajos. Professional reconvino.

Las partes estipularon someter a un comisionado especial, de acuerdo con lo dispuesto en la Regla 53 de las de Enjuiciamiento Civil de 1943 (Regla 41 de las de 1958) la cuestión para que éste determinara "qué cantidad en efecto se gastó en materiales y mano de obra". El comisionado, señor Waymouth rindió un informe del cual aparece que Professional adeudaba a Farber la cantidad de $45,167.07. Copiamos del informe lo que el señor Waymouth tituló "Resumen":

### "RESUMEN

De los datos que aparecen en este informe se desprende que el costo total del contrato eléctrico del 'Professional Building,' fue de $188,514.86, como sigue:

|  | Costo Total | Contrato Original Ajustado | Trabajos "Extras" |
|---|---|---|---|
| Materiales | $85,745.94 | $17,373.85 | $68,372.09 |
| Mano de Obra | 31,073.54 | 4,343.46 | 26,730.08 |
| Aumentos en precios | 7,225.21 | 7,225.21 | ——— |
| Adición del 15% y 10% a los materiales | 18,118.60 | ——— | 18,118.60 |
| Supervisión y "overhead" | 35,762.21 | 8,072.32 | 27,689.89 |
| Beneficio | 10,589.36 | 10,589.36 | ——— |
| Totales | $188,514.86 | $47,604.20 | $140,910.66 |

Ya he mencionado que la Professional Realty Corporation desembolsó, a los fines del contrato que nos ocupa, la suma de $143,347.79. De modo que a base de los datos contenidos en este informe adeudaría la suma de $45,167.07, para llegar al costo total de $188,514.86.

No he incluido beneficio alguno en los trabajos 'extras', fuera del beneficio en los materiales, montante a $18,118.60. Aparentemente muy poco capital propio utilizó la demandante en el contrato eléctrico que nos ocupa.

Antes de cerrar, quiero indicarle a su Señoría que en aquellos cómputos para los cuales la evidencia sometida no era del todo completa, traté de hacer dichos cómputos sobre las bases más razonables, a mi manera de ver, para ambas partes."

El juez de instancia al dictar sentencia declarando con lugar la demanda y sin lugar la reconvención, expresó que:

"El Tribunal por orden de fecha 15 de julio de 1955, dio su aprobación al informe del Special Master Sparrow, Waymouth & Co. en cuanto a las cantidades precisas desembolsadas por las partes en la consumación del contrato y cuyo informe hacemos formar en estos momentos parte integrante de nuestras Conclusiones de Hecho.

Concluímos de la evidencia ante nos, que una vez terminada definitivamente la obra se habían gastado en ella la suma de $188,514.86 y que Professional Realty Corporation había desem-

bolsado $143,347.79 (véase pág. 2 del *informe* Sparrow, Way-mouth & Co.), dejando una diferencia o balance de $45,167.07 para llegar a su costo total."

Contra la sentencia que la condenó a pagarle a Farber $45,167.07 y los intereses correspondientes, más $3,000 para honorarios de abogado, recurre ante nos Professional. ■

La controversia en este caso surge con motivo de las alteraciones que a petición de Professional se hicieron en la obra según originalmente convenida. La forma en que debe liquidarse ese trabajo adicional es la cuestión a determinar. Professional sostiene que la forma en que se liquidó representa hacerle pagar dos veces por un mismo concepto. Para sostener su punto alega que las disposiciones de la cláusula 8 del contrato, establece una fórmula para liquidar el trabajo extra y que era esa la forma que debía usarse para determinar el valor de ese trabajo. El tribunal de instancia al incorporar en su sentencia el *informe* completo del comisionado señor Waymouth, de hecho compensó el trabajo adicional a base de lo estatuído en la cláusula 8 del contrato, adicionándole además lo establecido en la cláusula 15 de las "Condiciones Generales". El contrato firmado entre las partes incorporaba en sus disposiciones lo que se conoce como "The General Conditions of the Contract for the Construction of Buildings of American Institute of Architects" pero se disponía que en caso de conflictos entre el contrato en sí y las "Condiciones Generales" que se incorporaban, prevalecería el primero.

Sostiene Professional que se le condena a pagar dos veces por un mismo concepto, ya que las cláusulas 8 y 15 son incompatibles, debiendo prevalecer según el contrato, la número 8 del mismo.

La cláusula 8 dispone así: ([1])

---

([1]) El texto inglés de la cláusula 8 dispone así:

"Where materials or equipment are changed with a resulting increase in the cost the amount of the change for materials alone shall be calculated on the difference in what would have been the June 14 cost to the Con-

"Si se sustituyeran los materiales o equipo con el consiguiente aumento en el costo, se calculará el importe del cambio de los materiales solamente sobre la diferencia entre lo que hubiese sido el costo al Contratista en junio 14 por los materiales y/o equipo eliminado, y el costo verdadero a la fecha de entrega de los materiales y/o equipo sustituídos más 15 y 10 por ciento. Si los materiales sustituídos costaren menos, la rebaja en el precio del contrato por los materiales únicamente será la diferencia actual en el costo, como se expone anteriormente."

El artículo 15 de las Condiciones Generales lee así: ([2])

"El Dueño, sin rescindir el contrato, podrá ordenar trabajo adicional o hacer cambios para alterar, adicionar o reducir el trabajo, debiendo reajustarse proporcionalmente el importe del Contrato. Todas dichas obras se ejecutarán de acuerdo con las condiciones del contrato original, excepto que cualquier reclamación por prorrogarse el término con motivo de dichos cambios se reajustará al momento de ordenarse dicho cambio.

"Al dar instrucciones, el Arquitecto tendrá autoridad para efectuar cambios de menor importancia en el trabajo que no ocasionen costo adicional y que no sean inconsistentes con el propósito del edificio, pero, de lo contrario, excepto en caso de emergencia que ponga en peligro la vida o la propiedad, no se efectuará ningún trabajo o cambio adicional a menos que sea en cumplimiento de una orden escrita del Dueño, firmada o contrarrefrendada por el Arquitecto, o una orden escrita del Arquitecto al efecto de que el Dueño ha autorizado el trabajo o

---

tractor for the materials and/or equipment eliminated, and the actual cost at the time of delivery of the materials and/or equipment substituted plus 15% and 10%. If the substituted materials cost less the decrease in the contract price for the materials alone shall be the actual difference in cost as stated above."

([2]) El texto inglés del artículo 15 de las Condiciones Generales lee así:

"The Owner, without invalidating the Contract, may order extra work or make changes by altering, adding to or deducting from the work, the Contract Sum being adjusted accordingly. All such work shall be executed under the conditions of the original contract except that any claim for extension of time caused thereby shall be adjusted at the time of ordering such change.

In giving instructions, the Architect shall have authority to make minor changes in the work, not involving extra cost, and not inconsistent with the purposes of the building, but otherwise, except in an emergency endangering life or property, no extra work or change shall be made unless in pursuance of a written order from the Owner signed or countersigned by the Architect, or a written order from the Architect stating

cambio adicional, y no será válida ninguna reclamación por una adición al importe del contrato a menos que así se ordene.

"El valor de cualquier trabajo o cambio adicional así ordenado se determinará de acuerdo con uno o más de los siguientes métodos:

(a) Por estimado y aceptación de una suma global.

(b) Por los precios unitarios que se hayan hecho constar en el contrato o que se convinieren posteriormente.

(c) Por costo y porcentaje o por costo y un estipendio fijo.

"Si no se llegare a un acuerdo en cuanto a uno de los métodos anteriores, el Contratista, siempre y cuando recibiere una orden como se expone anteriormente, procederá a realizar la obra. En ese caso y también en el caso previsto en el inciso (c), llevará y presentará, en la forma que el Arquitecto ordenare, una cuenta correcta del costo, acompañando los comprobantes. En todo caso, el Arquitecto certificará el importe, incluyendo una suma razonable para gastos generales y beneficios que se adeuden al Contratista. Los pagos por los cambios se harán mediante certificación del Arquitecto hasta tanto se haga una determinación final del valor.

.    .    .    .    .    .    .    ."

El juez de instancia resolvió que no siendo las citadas dos disposiciones incompatibles, ambas debían aplicarse para

---

that the Owner has authorized the extra work or change, and no claim for an addition to the contract sum shall be valid unless so ordered.

The value of any such extra work or change shall be determined in one or more of the following ways:

(a) By estimate and acceptance in a lump sum.

(b) By unit prices named in the contract or subsequently agreed upon.

(c) By cost and percentage or by cost and a fixed fee.

If none of the above methods is agreed upon, the Contractor, provided he receives an order as above, shall proceed with the work. In such case and also under case (c), he shall keep and present in such form as the Architect may direct, a correct account of the cost, together with vouchers. In any case, the Architect shall certify to the amount, including reasonable allowance for overhead and profit, due to the Contractor. Pending final determination of value, payments on account of changes shall be made on the Architect's certificate.

Should conditions encountered below the surface of the ground be at variance with the conditions indicated by the drawings and specifications the contract sum shall be equitably adjusted upon claim by either party made within a reasonable time after the first observance of the conditions."

determinar el valor del trabajo adicional realizado por Farber a petición de Professional.

¿Son incompatibles las dos disposiciones? La cláusula 8 establece que si como consecuencia del trabajo extra se necesitare usar material o equipo adicional, para determinar el costo del cambio en cuanto a los materiales solamente, se calculará tomando como base la diferencia de lo que hubiera costado el material y equipo eliminado en junio 14 de 1946 y el costo del nuevo material a la fecha de entrega más el 15% y el 10%.

El art. 15 de las Condiciones Generales, trata sobre la forma de liquidar el trabajo extra con más detalle y pormenor. Establece tres formas para determinar el valor del trabajo adicional:

(a) Mediante estimado y aceptación de una suma global.
(b) Precio por unidad según establecido en el contrato, o que se convenga posteriormente.
(c) Mediante costo y por ciento o costo y *"fixed fee"*.

Establece entonces que si no se ponen de acuerdo en ninguno de estos tres métodos, el contratista seguirá adelante con la obra, si recibe una orden al efecto. En ese caso, y también el caso previsto en el inciso (c), el contratista conservará y presentará al arquitecto el valor correcto de los materiales, acompañando los *vouchers*. En todo caso el arquitecto certificará el monto incluyendo *"reasonable allowance for overhead and profit due to the contractor"*.

Así vemos que en verdad no son incompatibles estas dos disposiciones. Por el contrario se complementan entre sí.

Mediante la cláusula 8 del contrato, las partes expresamente acordaron una fórmula para determinar el aumento en el costo de materiales o equipo en caso de cambios y trabajos extras. Esta fórmula coincide con la alternativa a que se refiere el inciso (c) del artículo 15 de las Condiciones Generales. No hay pues incompatibilidad alguna. Establecido lo anterior, cae por su peso la contención de la

recurrente. El informe del Comisionado que la corte a quo hizo formar parte integrante de las determinaciones de hecho, establece la suma adeudada correspondiente a lo desembolsado por materiales con motivo de los cambios, calculada dicha suma, según la fórmula contenida en la cláusula 8 y a que se contrae el inciso (c) del artículo 15. A eso le añadió la partida para gastos generales (*overhead*) que autoriza el referido artículo 15 al disponer que "*in any case the architect shall certify to the amount, including reasonable allowance for overhead and profit, due to the Contractor*". ▬

Por otro lado y en relación con los citados cambios en la obra, sostiene Professional que el tribunal de instancia erró al no formular una determinación de hecho específica en cuanto a cuál era el costo a 14 de junio de 1946 de los materiales eliminados y cuál era el costo, a la fecha de su entrega, de los materiales suplidos en sustitución de los primeros, para así estar en condiciones de aplicar a la diferencia en costo la fórmula anteriormente citada, a que se refiere la cláusula 8 del contrato y el inciso (c) del artículo 15 de las Condiciones Generales. No era necesario que el tribunal de instancia formulara tal determinación de hecho. El tribunal hizo suyo el informe del Comisionado el cual contenía una partida de $18,118.60 por concepto de "adición del 15% y 10% a los materiales". Y esa partida a su vez era el resultado de un simple cálculo matemático por parte del Comisionado en relación con la referida diferencia entre los materiales y equipos eliminados y los nuevos materiales y equipos suplidos. Carece de mérito, por lo tanto, la alegación de que el tribunal de instancia venía obligado a hacer sus propias especiales determinaciones sobre los diversos detalles de costo que sirvieron de base al Comisionado para rendir su informe. No obstante el hecho de que las partes estipularon que la cuestión referida al Comisionado se circunscribía a determinar el total del monto desem-

bolsado por las partes en la consumación del contrato, como de hecho el Comisionado hizo otras determinaciones y el juez sentenciador las hizo formar parte integrante de sus determinaciones de hecho, debe entenderse que el tribunal de instancia necesariamente también estaba aprobando las bases utilizadas por el señor Waymouth para rendir el informe y que no venía dicho tribunal obligado a duplicar en sus determinaciones de hecho el contenido y las necesarias implicaciones del informe del Comisionado. Y no debemos olvidar que el comisionado lo que hizo fue aplicar la fórmula que aparece en el artículo 8 del contrato que es igual a la del inciso (c) del artículo 15, más una suma razonable para gastos generales y beneficios.

*No se cometieron los errores apuntados por lo que procede confirmar la sentencia recurrida en todas sus partes.*

